UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TANGIA M. DELK,

                                        Plaintiff,

            -vs-                                                    07-CV-167-JTC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                                        Defendant.

_____

        Plaintiff Tangia M. Delk initiated this action pursuant to section 405(g) of the Social

Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of

Social Security (the "Commissioner") denying plaintiff's application for Social Security

disability insurance ("SSDI") and Supplemental Security Income ("SSI") benefits.  The

Commissioner has filed a motion for judgment on the pleadings pursuant to Rule 12(c) of

the Federal Rules of Civil Procedure (Item 9), and plaintiff has filed a cross-motion for

summary judgment reversing the decision of the Commissioner (Item 16).  For the

following reasons, the Commissioner's motion is denied, plaintiff's cross-motion is granted,

and the matter is remanded for calculation of benefits.

## BACKGROUND

        Plaintiff was born on January 11, 1963 (Tr. 31, 71).[1]  She applied for SSDI and SSI

benefits on August 28, 2002, alleging disability as of February 6, 2002, due to back, neck,

and knee impairments (Tr. 25, 71-73, 610-612).  Plaintiff's applications were denied on

_____

        [1]References preceded by "Tr." are to page numbers of the transcript of the administrative record,
filed by defendant as part of the answer to the complaint.

December 6, 2002, upon agency review by the Social Securty Administration ("SSA") (Tr. 25, 34-37, 613-618).  Plaintiff requested a hearing, which was held on September 25, 2005, before Administrative Law Judge ("ALJ") Larry Banks (Tr. 25-32, 714-734).  Plaintiff testified and was represented at the hearing by counsel.[2]

By decision dated October 26, 2005, ALJ Banks found that plaintiff was not under a disability within the meaning of the Social Security Act (Tr. 22-32).  Following the sequential evaluation process outlined in the SSA Regulations (see 20 C.F.R. Parts 404 (SSDI) and 416 (SSI)), the ALJ reviewed the medical evidence and determined that plaintiff's impairments, while severe, did not meet or equal the criteria of an impairment listed in the Regulations at 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listings") (Tr. 28). The ALJ considered plaintiff's allegations and testimony regarding her functional limitations, but found plaintiff to be "not totally credible" in this regard (Tr. 29).  The ALJ then found that while plaintiff was unable to perform her past work as a housekeeper, plaintiff had the residual functional capacity ("RFC") for a full range of sedentary work (Tr. 29-31).  Considering this RFC along with plaintiff's age (39 years old on the alleged disability onset date), educational background (limited, completed 11th grade), and work experience (unskilled), the ALJ determined that application of Rule 201.24 of the Medical-Vocational Guidelines set forth at 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"),[3]

---

[2]Jay Steinbrenner, a vocational expert, also testified at the hearing on the limited issue regarding the classification of plaintiff's past relevant work as a hospital housekeeper as medium, unskilled work (Tr. 733).

[3]The Grids were designed to codify SSA guidelines for considering RFC capacity in conjunction with age, education, and work experience in determining whether the claimant can engage in any substantial gainful work existing in the national economy.  *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

directed a finding that plaintiff was not under a disability at any time from February 6, 2002, through the date of the ALJ's decision (Tr. 31).   The ALJ's decision became the Commissioner's final determination on February 16, 2007, when the Appeals Council denied plaintiff's request for review (Tr. 6-9).

Plaintiff filed this action on March 20, 2007, seeking judicial review pursuant to 42 U.S.C. § 405(g).   In accordance with the court's routine scheduling order for dispositive motion practice in Social Security Appeals, the Commissioner moved for judgment on the pleadings, seeking affirmance on the ground that the ALJ's decision is supported by substantial evidence in the record (*see* Item 9).   Plaintiff responded by cross-motion, seeking reversal of the Commissioner's determination, asserting that ALJ Banks erred in assessing plaintiff's credibility, the combined effect of plaintiff's multiple impairments, and the opinions of her treating physicians (*see* Item 16).  Plaintiff also makes reference to the SSA's "fully favorable decision" on her second application for SSDI and SSI benefits (*id.*, Ex. A), which was filed in May 2006 while the agency appeal was pending on her present application, and which plaintiff argues should be given binding effect in this court's "substantial evidence" inquiry.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."   42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D.Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

## II.   Standard for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering

h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  The Commissioner ordinarily meets

his burden at the fifth step by resorting to the medical-vocational guidelines set forth in the Grids. However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

As indicated above, ALJ Banks followed the sequential evaluation process in this case, and determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 6, 2002, when she was involved in a motor vehicle accident (Tr. 27-28). Upon review of the objective medical evidence, the ALJ found that plaintiff's discogenic and degenerative back disorders, while severe, did not meet the criteria of Listing 1.04 (Disorders of the Spine), and that no other Listings were implicated (Tr. 28). Based on the evidence contained in the reports of treating and consulting physicians, as well as plaintiff's testimony regarding her subjective complaints, the ALJ found that plaintiff had the RFC for a full range of sedentary work which, considered along with her age, education, and work experience, and by application of Rule 201.24 of the Grids, directed a finding that plaintiff was not disabled because there were a significant number of jobs in the national economy she could perform (Tr. 29-31).

Plaintiff contends that these findings were based on a misapplication of the Regulations governing the assessment of credibility, the combined effect of multiple impairments, and the opinions of treating physicians. Plaintiff also contends that the court should consider the SSA's favorable determination on her second application to be binding on the Commissioner, or at least a convincing demonstration that the ALJ's decision is not supported by substantial evidence.

III.     **Assessment of Claimant's Credibility**

Plaintiff contends that the ALJ erred in his evaluation of the credibility of her testimony and statements in the record concerning the limiting effects of her pain and other symptoms (Tr. 29).  In assessing a claimant's credibility, the ALJ "may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence."  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y.1999) (internal quotation marks and citation omitted).  According to the applicable Social Security Ruling, the ALJ must follow a two-step process in evaluating the claimant's statements regarding pain:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) . . . that could reasonably be expected to produce the individual's pain or other symptoms. . . .

> Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.

Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2 (S.S.A.).

In addition, the Regulations require that if the claimant's subjective complaints of pain are not supported by the objective medical evidence, the ALJ must consider several factors in assessing the claimant's credibility, including:  (i) the claimant's daily activities, (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (iii) precipitating and aggravating factors, (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other

symptoms, (v) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms, (vi) any measures the claimant uses or has used to relieve pain or other symptoms, and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* SSR 96-7p, 1996 374186, at *3; *Yancey v. Apfel*, 145 F.3d 106, 109 n.6 (2d Cir. 1998); *Buske v. Astrue*, 2009 WL 211560, at *11 (N.D.N.Y. January 26, 2009).

In this case, ALJ Banks found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, duration and limiting effects of these symptoms were credible "only to the extent of [her] residual functional capacity" for sedentary work (Tr. 29). In making this determination, the ALJ discussed the objective medical evidence, including the reports of plaintiff's treating and consulting physicians as well as the results of several MRIs and other diagnostic studies, which document the treatment she has received for her back condition (*see* Tr. 29-30). The ALJ also discussed the evidence pertaining to plaintiff's daily activities, as reflected in her testimony and medical reports (*id.*). Although his findings do not explicitly indicate whether he considered each of the factors enumerated in the Regulations as outlined above, the court finds the reasons given by the ALJ sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination that plaintiff's subjective complaints were consistent with an RFC for sedentary work.

Accordingly, plaintiff is not entitled to reversal of the Commissioner's determination on the ground that the ALJ failed to properly assess her credibility.

-8-

### IV.    Combination of Impairments

Plaintiff also contends that the ALJ did not properly consider the combined effect of her multiple impairments when evaluating her RFC.  In this regard, the Regulations provide that where a claimant has alleged multiple impairments, the ALJ is obligated to consider the disabling effect of the combination of the impairments without regard to whether any one impairment, if considered separately, would be disabling.  *See* 20 C.F.R. §§ 404.1523, 416.923; *see also* §§ 404.1569a(d), 416.969(a) (discussing combined exertional and nonexertional limitations); *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995).  "In such instances, it is the duty of the [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled."  *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984), *quoted in Costanzo v. Apfel*, 2000 WL 575660, at *3 (W.D.N.Y. February 8, 2000).

In this case, as indicated in the discussion above, ALJ Banks determined that plaintiff's back problems did not meet or medically equal the criteria of Listing 1.04 (Disorders of the Spine), and that no other listings were implicated.  There is nothing in the ALJ's decision to indicate that he considered the effect of plaintiff's back problems in combination with any of the several other medical problems documented in the record, including patello-femoral derangement, restricted range of motion and chronic severe pain of both knees; pain in her ankles, feet, neck and shoulders; obesity; hypertension, and depression (*see, e.g.*, Tr. 476).  Simply stated, the ALJ made no specific findings as to the effect of these impairments in combination with plaintiff's back problems, or whether and

to what extent the effect of the combined impairments caused plaintiff to be disabled, as required by the Regulations.

Accordingly, the court finds that the ALJ erred by failing to make specific and well-articulated findings as to the effect of the combination of plaintiff's impairments on her residual functional capacity to engage in work-related activities.

## V.     Evaluation of Medical Opinion Evidence

The Regulations require that the opinion of a claimant's treating physician which reflects judgments about the nature and severity of the claimant's impairments must be given "controlling weight" by the ALJ, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Rosa*, 168 F.3d at 78-79. If the opinion of the treating physician as to the nature and severity of the claimant's impairment is not given controlling weight, the Regulations require the ALJ to apply several factors to decide how much weight to give the opinion, including the frequency of examination and the length, nature, and extent of the treatment relationship; the evidence in support of the opinion; the opinion's consistency with the record as a whole; whether the opinion is from a specialist; and other relevant factors. *See* 20 C.F.R. § 404.1527(d)(2)(i), (ii), and d(3)-(6); § 416.927(d)(2)(i), (ii) and d(3)-(6); *see also Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to the treating source's opinion, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), and "cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa*,

168 F.3d at 79 (internal quotation omitted); *see also Rooney v. Apfel*, 160 F. Supp. 2d 454,

465 (E.D.N.Y. August 14, 2001).

> As explained by the SSA, when the ALJ's determination

> is not fully favorable, *e.g.*, is a denial . . . the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

In this case, the record contains several opinions of treating physicians as to the

nature and severity of plaintiff's impairments.  For example, Dr. Ghulam S. Masoodi, M.D.,

has been the plaintiff's treating internist and has rendered regular care and treatment to

plaintiff since prior to the alleged onset of her disability.  Dr. Masoodi has consistently

reported that plaintiff's spinal disorder and other conditions have rendered her "totally

disabled" during the relevant period (*see* Tr. 271-75, 281-82, 385 ("forever totally

disabled"), 424, 485-86).  In a post-hearing report dated September 27, 2005, Dr. Masoodi

gave the following synopsis:

> [Plaintiff] has been a patient of mine since January 25, 2002.  She has a diagnosis of L5-S1 disc dehydration with disc bulge, T9-T10 and T10-T11 disc herniation, peripheral neuropathy, restless leg syndrome, burning and numbness in the feet and legs, disc dehydration with mild broad posterior disc bulges at C4-5 and C5-6, patellofemoral derangement of both knees, restricted range of motion of both knees, chronic severe pain of both knees, severe muscle spasms in neck and lower back, limited range of motion of lumbar spine, constant severe pain of neck and back, possible scapuloperoneal muscular dystrophy syndrome with peroneal neuropathy around the fibular head; pain in thighs, hypertension; depression; and side effects of medications, among other conditions and symptoms.  Her condition necessitates that she must be able to lay down in a reclined position when needed and for as long as necessary throughout the day.  In my opinion, Ms. Delk's medical conditions have prevented her from engaging

in substantial gainful employment since February 6, 2002.   It cannot be determined at this time when, if at all, she will be able to return to gainful employment.

(Tr. 476).

In his hearing decision, ALJ Banks stated that he assigned "no weight" to Dr. Masoodi's opinion that plaintiff was totally disabled and unable to engage in substantial gainful employment, "[b]ecause the determination of whether an individual is disabled is reserved to the Commissioner"  (Tr. 30).  In this regard, the Regulations provide:

> We are responsible for making the determination or decision about whether you meet the statutory definition of disability.  In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled.  A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).   "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability.  A treating physician's statement that the claimant is disabled cannot itself be determinative."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* SSR 96-5p, 1996 WL 374183 (S.S.A.) (Medical Source Opinions on Issues Reserved to the Commissioner).

However, the courts have often repeatedly cautioned SSA adjudicators that this guideline must be considered in conjunction with the regulatory mandate that a treating source's opinion on the issue of the nature and severity of the claimant's impairments must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence. *See, e.g., Green-Younger v. Barnhart*, 335 F.3d 99, 1-6 (2d Cir. 2003).  Indeed, SSR 96-5p

-12-

expressly reminds adjudicators that, "[i]n evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d)."   1996 WL 374183, at *3.   In other words, the fact that a treating physician reports the patient's medical condition as "disabled," or a "disability," does not by itself disqualify the report from the requirements of the treating physician Regulations.   This is the result suggested by the ALJ's assignment in this case of "no weight" to Dr. Masoodi's opinion that plaintiff's medical conditions have prevented her from engaging in substantial gainful employment since the alleged onset date  of February 6, 2002, without discussing any of the pertinent factors as enumerated above.

In addition, the court's review of the objective medical evidence in the record indicates that Dr. Masoodi's opinion on the issue of the nature and severity of plaintiff's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence.   For example, Dr. Cameron Huckell, a spinal surgeon, evaluated plaintiff on several occasions between April 2004 and March 2005, and repeatedly reported that plaintiff was "temporarily totally" or "significantly" disabled throughout that period as a result of her spinal impairments (*see* Tr. 490, 491, 495, 498).   Instead of discussing the application of any of the factors outlined in the Regulations governing the evaluation of opinion evidence–particularly, the requirement that the adjudicator "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist," 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5), the ALJ simply stated that "Dr. Huckell's opinion relative to the ultimate conclusion was assigned no weight on the same basis as Dr. Masoodi's opinion."  (Tr. 30).   According to the ALJ, "these doctors did not

support their conclusions that the claimant was disabled by objective medical evidence . . . ." (*Id.*)

This finding is plainly erroneous.   Dr. Huckell consistently indicated that his impressions and diagnoses were based upon his personal review of MRI studies of the plaintiff's lumbar and cervical spine, as well as his observations made upon comprehensive musculoskeletal and neurologic examinations (*see, e.g.*, Tr. 489, 491, 494).   The record further reflects that Dr. Masoodi regularly reviewed the several diagnostic studies performed on plaintiff throughout the relevant period, as well as the reports of several specialists to whom he referred plaintiff for treatment.   Clearly, the administrative record considered as a whole reveals that the reports of these two treating sources are amply supported by medically acceptable clinical and laboratory diagnostic techniques and other available objective medical evidence, and plaintiff was entitled to a more thorough assessment of the appropriate weight to be accorded to the opinions of these physicians on the issue of the nature and severity of her impairments–beyond the ALJ's explanation that the ultimate issue of disability is reserved to the Commissioner.

For these reasons, the court finds that the ALJ's determination was based on an erroneous application of the requirements for evaluating the opinions of plaintiff's treating sources, with the result that the ALJ improperly disregarded highly probative evidence regarding the nature and severity of her impairments.

## VI.    Plaintiff's May 2006 Application

Plaintiff's final ground for reversal of the Commissioner's determination relates to the SSA's consideration of her second application for SSDI and SSI benefits, filed in May

2006 while the agency appeal was pending on her initial application.  She contends that on January 5, 2008, the SSA issued a "fully favorable decision" on this subsequent application, finding plaintiff disabled and entitled to benefits as of her alleged onset date of February 6, 2002, and that the SSA–and the court–should give this determination binding effect when reviewing her first application alleging the same onset date.

In response to this contention, the Commissioner explains that the January 5, 2008 decision was made by New York State Disability Determination Services ("DDS") in accordance with the SSA's informal remand initiative to help reduce the agency's hearing backlog.  As a matter of SSA policy, when a subsequent application is filed while a request for review on a prior application is pending with the Appeals Council or before a district court, the subsequent application can still be processed, but the date of entitlement or eligibility can be no earlier than the day after the date of the ALJ decision in the prior claim.[4]  Upon receipt of the January 5, 2008 decision, the SSA concluded that the state agency's determination regarding the February 6, 2002 onset date was contrary to this policy, and the matter was returned to the SSA's Office of Disability Adjudication and Review ("ODAR") for a hearing to determine  whether plaintiff was entitled to benefits as of October 20, 2005 (the date the SSA found to be the day after ALJ Banks' decision on plaintiff's original application) (see Item 17 and Ex. A attached thereto).

_____

[4]This policy was adopted in connection with the stipulation and order of settlement entered in 1991 in the class action *Rios, et al. v. Sullivan*, Civ. No. 86-2548 (E.D.N.Y.), pursuant to which the SSA implemented "procedures which provided for expeditious processing of subsequent applications and immediate effectuation of payment on favorable decisions on subsequent applications to the extent that payment is not for any period covered by prior application which is the subject of the pending court action[.]"  Copy of *Rios* Stipulation and Order, dated November 6, 1991, at 2 (attached as Ex. B to Item 17).

The hearing on plaintiff's second application took place on July 22, 2008, before ALJ Grenville W. Harrop, Jr.  In a decision dated August 15, 2008, ALJ Harrop determined that the evidence in the record as a whole, including the reports of treating sources and other medical evidence considered by the Commissioner in connection with plaintiff's August 2002 application, established that plaintiff was disabled within the meaning of the Social Security Act and entitled to benefits as of the administrative onset date of October 20, 2005 (*see* Item 24 and attachment thereto).

As pointed out by the Commissioner, plaintiff brought this action to review the SSA's consideration of plaintiff's August 2002 application for SSDI and SSI benefits.  Accordingly, any determinations made by the SSA with respect to the processing of plaintiff's subsequent applications cannot be considered as binding on this court's review of the administrative record presented on plaintiff's initial application.

## VII.    Remedy

As discussed above, the court has determined that ALJ Banks failed to make specific and well-articulated findings as to the effect of the combination of plaintiff's impairments on her residual functional capacity to engage in work-related activities, and to give good reasons for the weight accorded to the opinions of plaintiff's treating sources. The only remaining issue is the appropriate remedy.

Under 42 U.S.C. § 405(g), the court has the authority to reverse or modify the final decision of the Commissioner, with or without remanding for further proceedings.  "[W]hen the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," *Parker v. Harris*, 626 F.2d 225, 235 (2d. Cir. 1980),

-16-

reversal and remand for the sole purpose of calculation and payment of benefits is an appropriate exercise of the court's authority.  *See Soto v. Barnhart*, 242 F. Supp. 2d 251, 254 (W.D.N.Y. 2003) (remanding solely for calculation of benefits, and not further proceedings, where ALJ's error was in interpreting and weighing treating physician evidence).  The courts have found this remedy to be particularly appropriate where the record is fully developed and supports a finding of disability, and the plaintiff's application has been pending for several years.  *See, e.g., Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) (Commissioner failed to sustain fifth-step burden of proof; application for benefits pending more than six years at time of decision by court of appeals, which found "that a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay"); *Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir. 1998) (Commissioner failed to sustain fifth-step burden of proof; application for benefits pending more than four years at time of decision by court of appeals).

In this case, the record has been developed and reviewed at all administrative levels, twice.  The second review resulted in a fully favorable medical determination by the state DDS, acting under an initiative to reduce the SSA's hearing backlog, which found plaintiff's disability established as of her alleged onset date of February 6, 2002.  However, the SSA subsequently rescinded this finding, and determined that a hearing was necessary anyway because of conflicting policy considerations regarding the pendency of prior applications.  In the court's view, this internal action by the SSA has hindered, rather than advanced, not only the objectives of the agency's backlog reduction initiative but also the overall remedial objectives of the Social Security Act, to plaintiff's detriment.

In any event, the second hearing also resulted in a favorable determination of disability, leaving little doubt that the record as it stands supports an award of benefits, and that a remand for further proceedings would serve no useful purpose other than additional delay in the processing of an application which has already been pending since August 2002, more than six years.

## CONCLUSION

Based on the foregoing analysis, and after a full review of the record, the court concludes that the ALJ's determination in this case was based on an erroneous view of the legal standards for assessing the combined effect of multiple impairments and the medical opinions of treating sources.  Accordingly, the Commissioner's motion for judgment on the pleadings (Item 9) is denied, plaintiff's cross-motion for judgment on the pleadings (Item 16) is granted, and this matter is remanded to the Commissioner solely for the calculation and payment of benefits.  Because the policy considerations which caused the SSA to rescind its onset date determination on plaintiff's second application no longer apply, the onset date shall be established as February 6, 2002.

The Clerk of the Court is directed to enter judgment in favor of plaintiff.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:    3/4                    , 2009
p:\pending\2007\07-167.feb5.09